UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| |
JOSEPH E. SCHULZE,                                    |        Case No. 1:09-cv-724
                                                      |
        Plaintiff,                                    |
                                                      |   HONORABLE PAUL L. MALONEY
              v.                                      |
                                                      |
TOWNSHIP OF CLAYBANKS,                                |
TOWNSHIP OF CLAYBANKS ZONING BOARD,                   |
        and                                           |
RICHARD SMITH, in his individual capacity             |
and as Claybanks Township Supervisor,                 |
                                                      |
        Defendants.                                   |
                                                      |

## OPINION and ORDER

### Granting the Defendant's Motion for Summary Judgment

Plaintiff Joseph E. Schulze ("Schulze") resides in Claybanks Township, in Oceana County, Michigan. *See* Complaint filed August 7, 2009 ("Comp") ¶ 1. In June 2000, Schulze bought a 20-acre parcel of land and a house in Montague, which is within Claybanks Township. *See* Comp ¶¶ 11-12. By Schulze's account, he kept "several" pets on his property, "dogs of at least some Staffordshire Bull Terrier lineage", and the dogs have never harmed anyone. *See* Comp ¶¶ 13 & 15.

<u>The First State-Court Action and Order Against Schulze (No. 03-3642-CH).</u>

On March 28, 2003, the local government of Claybanks Township ("the township") filed a complaint against Schulze and his father, Joseph Schulze Senior, who they knew did not own, control, or manage the property.  *See* Comp ¶¶ 16-17; *see also* Answer filed August 27, 2009 ("Ans") ¶ 16 (mentioning Oceana County Circuit Court case no. 03-3642-CH).

In August 2003, the township enacted a new Animal Control ordinance which made it a crime to keep more than six dogs over the age of four months on any lot.  *See* Comp ¶ 18.  Schulze believes that the township enacted the new ordinance "in an effort to make the Schulze[s'] defense more difficult and specifically with an eye towards the pending litigation . . . ."  Comp ¶ 18.

In October 2003 the township filed a first amended complaint in Oceana County Circuit Court case no. 03-3642-CH, adding new charges against Schulze and his father.  *See* Comp ¶ 19. The township's first amended complaint included five claims:  Count One for Violation of Zoning Ordinance, Count Two for Common-Law Nuisance, Count Three for violation of the Dangerous Animal Ordinance, Count Four for violation of the Dangerous Animal (Pit Bull) Ordinance, and Count Five for violation of the general Animal Control Nuisance and Public Safety Ordinance.  *See* Ans ¶ 23.

In May 2004, Schulze applied for a conditional-use permit so that he could legally keep all the dogs with him on his property.  After a hearing, the township zoning board on June 9, 2004 recommended denying the application, which the general township board did on June 14, 2004. Township Zoning Board member Munn (a non-party) advised Schulze to submit an amended application which better addressed the concerns of people in the community.  *See* Comp ¶¶ 20-21 and Ans ¶ 21.

On December 13, 2004, the township enacted a Dangerous Animals Ordinance which conclusively presumes that all dogs of the breed maintained by Schulze ("pit bulls") are dangerous. *See* Comp ¶ 22 and Ans ¶ 22.  Schulze believes that the township enacted this ordinance specifically to target him and his father, but the township denies this.  *See* Comp ¶¶ 22 and 24 and Ans ¶ 22.

On January 14, 2005, the township amended its complaint again, adding a count for violation of the new Dangerous Animals ordinance.  *See* Comp ¶ 23.

On November 28, 2005, the Honorable Terrence R. Thomas, Michigan Circuit Judge, issued a final order which directed that Schulze

> shall, on or before Thursday, December 15, 2005, comply with all applicable Claybanks Township ordinances regulating dogs or animals located at 7960 South 48th Avenue; or, in the alternative, remove all of the dogs from said premises that are in violation of township ordinances on or before December 15, 2005 and that he is enjoined from future violation of said ordinances.

Defs' MSJ, Ex. 9 at 3.  The County Circuit Court retained jurisdiction to enforce the order.  *Id.*

It is undisputed that Schulze did not comply with the November 2005 order.  The Township moved for a show-cause order on December 16, 2005, and the Circuit Court issued an order that same day, directing Schulze to show cause why he should not be found in violation of the court's November 28, 2005 Sentence Order for continuing to violate the Dangerous Animal Ordinance. After hearing testimony and argument at a show-cause hearing on January 9, 2006, and another hearing on February 22, 2006, the Circuit Court determined that Schulze was keeping animals which the ordinance defined as "dangerous animals", in violation of the November 2005 order and the ordinance itself.

On May 1, 2006, the Circuit Court issued an order which found as follows: "[T]he Court ha[s] verified that . . . six (6) pit bulls and three (3) pit bull puppies remain on the property."  It is

undisputed that the Dangerous Animals Ordinance prohibited the keeping of *any* pit bulls on property within the township. In June 2006, the Oceana County Circuit Court issued an Order Imposing Sentence against Schulze. *See* Ans ¶ 29. The Sentence reads as follows:

> This matter having come before the Court upon the Order deferring Sentencing and Allowing Inspection dated May 1, 2006, the Court having heard testimony concerning the Defendant's compliance with the Court's Order dated November 28, 2005, now, therefore,
>
> IT IS HEREBY ORDERED AND ADJUDGED that Township Supervisor Dick Smith, and Oceana Sheriff's Deputy, Roy Strait, are empowered to enter upon the lands of the Defendant between the hours of 8:30 a.m. and 5:00 p.m., Monday through Friday, in order to inspect and insure that the property complies with all duly adopted ordinance[s] in force and in effect in Claybanks Township.
>
> [S]hould the Defendant, Joseph Schulze, Jr., his agents and assigns, refuse, block, or attempt such an inspection as provided herein that [sic] the Oceana County Sheriff's Department is empowered to arrest and detain the Defendant, Joseph Schulze, Jr., in the Oceana County Jail until the inspection has been completed.
>
> [S]hould there be more than six (6) dogs upon the property of the Defendant that [sic] the Oceana County Sheriff's Department is hereby empowered to arrest and detain the Defendant, Joseph Schulze, Jr., in the Oceana County Jail until the number of animals falls below the limit contained herein.
>
> [T]o each party is reserved the question or application [sic] of the Township's Dangerous Animal Ordinance adopted December 13, 2004 and that the entry of this Order is not intended to affect the rights or interests of either party as it relates to the Defendant's use of his property or the application of the Ordinance.

Defs' MSJ, Ex. 10 at 1-2. The Circuit Judge again retained jurisdiction to monitor Schulze's compliance. *Id.* at 2.

<u>The Second State-Court Action & Order Against Schulze (Nos. 07-6116-CH & 07-6219-AS).</u>

About three months later, on September 1, 2006, Schulze submitted an amended application

-4-

for a conditional-use permit.  *See* Comp ¶ 25 and Ans ¶ 25.  In response, he alleges, the township threatened that it would add more charges to the complaint if he continued to pursue the permit. *See* Comp ¶¶ 25 and 27.  The township alleges that when its February 2, 2007 letter asked Schulze to clarify his amended application, he refused to say whether he was requesting a variance from the Zoning Board of Appeals, a Conditional-Use Permit from the Township Planning Commission, or a Dog Kennel Permit (which, they say, could be issued only by the County).  *See* Ans ¶¶ 25 and 28.

By letter dated January 25, 2007, Schulze's counsel asked the township to place his "Application for Special Use Permit and/or Variance" on the agenda for "the next Planning Commission or Zoning Board meeting", and told the township that he "planned to file for superintending control" if they did not respond within ten days or approve his amended application. *See* Comp ¶ 28 (alleging that he said this "in January 2007") and Ans ¶ 28 (specific dates as stated).

On January 19, 2007, the township filed another action against Schulze for violating one or both ordinances, assigned Oceana County Circuit Court case no. 06-07-6116-CH.  *See* Comp ¶ 29 and Ans ¶ 29.  The court refers to this as the second state-court action.  Schulze believes that the township filed that second enforcement action "in response" to his threat to "file for superintending control", *see* Comp ¶ 29, but the township points out that the January 19, 2007 initiation of the second action came *before* Schulze's letter of January 25, 2007, *see* Ans ¶ 28.

In December 2007, the Township moved for summary disposition.  The Township's brief substantively addressed Schulze's challenges to the Dangerous Animal Ordinance on the grounds of Equal Protection, Substantive Due Process, impermissible retroactivity under the rubrics of ex post facto and "bill of attainder" challenges, and selective prosecution.  *See* Defs' MSJ, Ex 13 at 5-6 (summary of issues), 6-8 (dangerous-animal ordinance did not purport to apply retroactively, and

township had not sought to apply it retroactively), 8-10 (not a bill of attainder), 10-12 (ordinance was rationally related to a legitimate governmental interest and did not violate equal protection or substantive due process), and 12-13 (no selective enforcement because Schulze presented no evidence of others who were similarly situated but were treated more favorably). Schulze filed an opposition brief on January 30, 2008, *see* Defs' MSJ Ex 14, and the Circuit Court heard oral argument on February 4, 2008. That same day, the Circuit Judge issued an order granting summary disposition to the Township "for the reasons stated on the record." *See* Defs' MSJ x 15. The parties, however, have not filed a copy of the motion-hearing transcript.

On February 19, 2008, the Circuit Judge issued a consent Order for Entry Upon Land, stating as follows:

> This matter having come before the Court upon the Plaintiff's Motion for Entry Upon Land and the parties having announced their agreement concerning the matter on the record, now therefore,
>
> IT IS HEREBY ORDERED AND ADJUDGED THAT PLAINTIFF, through its designated representative, shall be allowed entry upon the property . . . for the purpose of verifying licensure requirements for animals located thereon.
>
> [A]nyone who deems [sic, deigns?] to interfere with the enforcement of this inspection provision will be dealt with appropriately.

P's Opp, Ex S at 1-2. The Judge retained jurisdiction to monitor Schulze's compliance. *Id.* at 2.

The Third State-Court Action and Order Against Schulze (No. 07-6183-CZ).

Schulze initiated an action challenging the constitutionality of the ordinances in February 2007, and the Township filed an answer and affirmative defenses in April 2007. *See* Defs' MSJ, Exs 16 and 17. On October 10, 2007, the Township filed a motion for summary disposition. *See* Defs' MSJ, Ex 18. The Michigan Circuit Judge heard oral argument on November 13, 2007, *see* Defs'

MSJ Ex 19 (partial transcript), and issued an order that same day granting the Township's motion for the reasons stated on the record during the hearing, *see* Defs' MSJ Ex 20.

Due to the township's motion filed on September 10, 2008, they secured an order in November 2008 holding Schulze in contempt for violating the circuit court's prior orders and judgments, and directing him to remove from his property "all dangerous animals located thereon which are not in compliance with the ordinances of the Township by Monday, November 17 [sic], 2008 at 9:00 a.m." P's Opp, Ex T at 1-2. The contempt order directed that Schulze be incarcerated in the Oceana County Jail if he failed to comply, and that he be held there until he complied. *See id.* at 2. *See also* Ans ¶ 32 (alleging that contempt order issued November 24, 2008) and Comp ¶ 32 (alleging that the contempt order issued a week earlier, on November 17, 2008).

> State-Court Action #4 (No. 07-6219-AS) is Consolidated with #3.

While the third state-court action was pending, Schulze filed *In re Joseph E. Schulze*, Case No. 07-6219-AS, in the Oceana County Circuit Court, in March 2007 ("the fourth state-court action"), requesting a writ of mandamus directing the township to act upon an application he allegedly filed for a variance or conditional-use permit or dog-kennel permit. *See* Defs' MSJ, Ex 23 (complaint in No. 07-6219-AS). By order dated January 10, 2008, the circuit judge consolidated this action with the third state-court action.

> In State-Court Action #3 and #4, the Michigan Court of Appeals
> Affirms Summary Disposition for the Township on Schulze's Constitutional and Tort Claims

On February 12, 2009, a panel consisting of Presiding Judge Jane Markey, Judge William Murphy, and Judge Stephen Borrello, affirmed the grant of summary disposition to the Township

in Oceana Circuit Court Case No. 07-6183-CZ (into which Case No. 07-6219-AS had been previously consolidated).  Because the township seeks to dismiss the instant complaint on the ground of claim preclusion and issue preclusion, it is useful to reproduce the Michigan Court of Appeals' unpublished *per curiam* opinion in its entirety.  The panel held that count one (a plethora of constitutional claims, including those asserted in our case) and count two (civil conspiracy to violate those same constitutional rights) were barred by *res judicata*, and that count three (tort claims) were barred by governmental immunity.  The panel wrote as follows:

> Plaintiffs appeal as of right the trial court's granting summary disposition in favor of defendants in this action involving a continuing dispute between plaintiffs and Claybanks Township (township) with respect to the harboring of numerous dogs (pit bulls) by plaintiffs.  [footnote stating that court will refer to Schulze as JES and his father as JRS]  This is one of four lawsuits between the parties filed over the past six years.  We affirm.

> We have carefully scrutinized the documents contained in the lower court record regarding not only this lawsuit but also the other three actions involving the various parties.  The first lawsuit constituted an ordinance enforcement action by the township against JES and JRS.  The second suit was an ordinance enforcement action by the township against JES alone.  The third lawsuit, which is the instant suit, entailed a three-count complaint filed by plaintiffs [Schulze] against defendants [the township].  And the fourth lawsuit involved a request for superintending control or mandamus by JES against the township relative to an application for a conditional use permit.

> This Court reviews *de novo* a trial court's decision on a motion for summary disposition.  *Kreiner v Fischer*, 471 Mich 109, 129; 683 NW2d 611 (2004).

### Count I
### [Ex Post Facto, Bill of Attainder, Substantive Due Process, Equal Protection, Procedural Due Process, Selective Enforcement]

> With respect to count I of [Schulze's] complaint, they sought a declaration that the animal control nuisance and public safety ordinance (animal control ordinance), enacted in August 2003 during the first lawsuit, and the dangerous animal ordinance, enacted in December 2004 also during the first lawsuit, were void.

> Plaintiffs maintained that the ordinances were invalid because they constituted *ex*

-8-

*post facto* legislation, constituted bills of attainder, violated substantive due process, violated equal protection, constituted a deprivation of the right to possess and use property without due process, and because they were selectively enforced against JES on the basis that he is African-American.  Plaintiffs also prayed for money damages.  The trial court dismissed count on the basis of MCR 2.116(C)(6), *res judicata*, governmental immunity, lack of jurisdiction (discrimination aspect of claim), and because it failed substantively.

[omitting footnote 2, noting that Schulze had not properly asserted any claims under Michigan's Elliott-Larsen Civil Right Act, Mich. Comp. Laws § 37.2101 *et seq.*]

MCR 2.116(C)(6) provides for summary disposition where "[a]nother action has been initiated between the same parties involving the same claim."  The second lawsuit, in which JES presented constitutional challenges to the enforcement of the dangerous animal ordinance, remained pending at the time summary disposition was granted in the instant case.  Plaintiffs' argument in their appellate brief does not address MCR 2.116(C)(6), nor make any reference whatsoever to the court rule.  Accordingly, summary disposition [on count I] can be affirmed simply for failure to challenge a ground given by the trial court in support of its ruling.

In a reply brief, after defendants discuss MCR 2.116(C)(6) in their response brief, plaintiffs argue that (C)(6) is inapplicable because the second lawsuit and this case involve different parties and different claims.  Raising an argument for the first time in his reply brief is not sufficient to present the issue for appellate review.  [citations omitted]  Moreover, *MCR 2.116(C)(6) does bar the constitutional claims in count I as they pertain to JES and the dangerous animal ordinance.  See Fast air, Inc v Knight*, 235 Mich App 541, 545-46l; 599 NW2d 489 (1999).

With respect to res judicata, the doctrine bars a subsequent action between the same parties when the evidence or essential facts are identical.  *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999).   Res judicata precludes a second action when (1) the first decision was decided on the merits, (2) the decree in the prior action constituted a final decision, (3) the matter contested in the second action was or could have been resolved in the first action, and (4) both actions involved the same parties or their privies.  *Id.* . . .   Further, "[r]es judicata applies to consent judgments."  *Id.*  Additionally, this court has stated that "[t]he dismissal with prejudice of [a] . . . suit, which arose out of the same facts as the instant suit, amount[s] to an adjudication of the merits and bars [the instant] action."  *Wilson v. Knight-Ridder Newspapers, Inc.*, 190 Mich app 277, 279; 475 NW2d 388 (1991).

On the basis of the record provided, and given the principles recited above, any constitutional claims made by JES in count I concerning the animal control ordinance were barred by res judicata arising out of the consent judgment entered in the first lawsuit.  Furthermore, any constitutional claims made by JRS in count I

concerning the animal control and dangerous animal ordinances were barred by res judicata arising out of the stipulated dismissal entered in the first lawsuit. The stipulated dismissal was entered with prejudice and without costs. *Effectively, MCR 2.116(C)(6) and the doctrine of res judicata, together, supported summary dismissal of count I in its entirety.*  [footnote 3 concludes that the township board and supervisor Smith are privies of the township]

**Additionally, with respect to the court's ruling that count I fails substantively, plaintiffs insufficiently address the issue,** failing to present any legal analysis regarding ex-post facto legislation, bills of attainder, substantive due process, equal protection, and deprivation of property rights. Plaintiffs recite the constitutional rights that defendants allegedly violated and then contend that there was ample evidence to submit the constitutional claims to a jury. The "ample" evidence, according to plaintiffs, is that JES applied for a special or conditional use permit, that the application was denied on the basis of citizen complaints, that the dangerous animal ordinance was then enacted, that JES later applied for a permit to operate a kennel, that the township failed to act on the application, and that the township then filed the second lawsuit. The argument reflects a complete absence of any discussion regarding the principles associated with the constitutional claims and relevant authority, and a complete absence of any analysis. As our Supreme Court so eloquently stated in *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998) . . . :

> "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must adequately prime the pump; only then does the appellate well begin to flow."

Finally, even if substantively reviewed, plaintiffs' constitutional claims in count I fail for the most part. *See* . . . *Champion v Secretary of State*, 281 Mich App 307, 324-25; __ NW2d __ (2008) (discussing equal protection); *Dorman v Clinton Twp* 269 Mich App 638, 650-51; 714 NW2d 350 (2006) (discussing substantive due process); *In re McEvoy*, 267 Mich App 55, 72; 704 NW2d 78 (2005) (discussing bills of attainder); *People v Callon*, 256 Mich App 312, 316-318; 662 NW2d 501 (2003) (discussing ex post facto laws).  [footnote 4 noted that governmental immunity, however, did not bar the constitutional claims in count I]

### Count II
### [Civil Conspiracy to Deprive the Schulzes of their Civil Rights]

Count II of plaintiffs' complaint alleged that defendants engaged in a civil

conspiracy to deprive plaintiffs of their civil rights.  The way the claim is structured is that it essentially mimics the allegations in count I and simply adds allegations that defendants acted in concert to violate plaintiffs' constitutional rights.  In regard to a claim of civil conspiracy in general, the essential elements of a cause of action are: (1) a concerted action (2) by a combination of two or more persons (3) to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means.  *Admiral Ins Co v Columbia Cas Ins Co*, 194 Mich App 300, 313; 486 NW2d 351 (1992).  Because this count mirrors count I, our analysis in regard to count I is equally applicable to count II.  The conspiracy aspect of count II does not call for a different approach.  [going on to decline to address statute-of-limitations issue]

### Count III
### [Malicious Prosecution and Conspiracy to Maliciously Prosecute]

This count alleged malicious prosecution and conspiracy to maliciously prosecute JRS relative to the ordinance enforcement action brought against him in the first lawsuit.  To establish a claim of malicious prosecution, a party must show that . . . . * * *

This claim was dismissed, at least in part, based on governmental immunity.  Momentarily setting aside the issue of governmental immunity, the malicious prosecution claim is clearly lacking in merit . . . . * * *

With respect to governmental immunity, plaintiffs argue that it does not protect any of the defendants because the township and township board were not engaged in a governmental function and defendant Smith was acting outside the scope of his authority.  Plaintiffs only present this argument in the context of challenging the dismissal of count II, not count III, so on that basis alone we can affirm dismissal of count III.  Governmental immunity relative to count III is first raised in plaintiffs' reply brief, presenting the same argument as to governmental immunity posed by plaintiffs when addressing count II.  Regardless, governmental immunity does protect all of the defendants from the malicious prosecution claim.

* * *

[C]ertainly an ordinance enforcement action by a township constitutes the exercise or discharge of a government function regardless of whether the specific conduct complained of in prosecuting the action was tortious.

Additionally, "[a] judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability to persons or damages to property if he or she was acting within the scope of his or her judicial, legislative, or executive authority."  MCL 691.1407(5); *Odom v. Wayne Co*, . . . . Defendants assert that township supervisor Smith was absolutely immune from tort liability as the highest executive official at the township level.  Plaintiffs do not

-11-

dispute this characterization, and there is supporting authority for the proposition.
* * *  In sum, governmental immunity protects all of the defendants from the
malicious prosecution claim.

Affirmed.

Defs' MSJ, Ex 21 (boldface added to section heading) (italics added for emphasis throughout) (some

paragraph breaks added).  On June 23, 2009, the Michigan Supreme Court issued an order denying

Schulze's application for leave to appeal because the issues presented did not merit further review.

*See* Defs' MSJ, Ex 22 (Order in Mich. S. Ct. No. 138521).


The Instant Federal Lawsuit.

Schulze filed the instant complaint on August 7, 2009, and all three defendants jointly filed

a timely answer and affirmative defenses on August 27, 2009.  *See* Doc. Nos. 1, 4 and 5.  Schulze

alleges that the township selectively targeted him because he is black, making numerous

unannounced visits to his home to look for dogs whose presence violated the Animal Control and

Dangerous Animals ordinances, while failing or refusing to take similar inspection and enforcement

measures against non-black residents who kept dogs on their property.  *See* Comp ¶¶ 30 and 33-35.

The township admits that, pursuant to the May 1, 2006 and June 26, 2006 orders of the Oceana

County Circuit Court, county sheriff's deputies and/or county animal-control officers entered onto

Schulze's land to inspect and ensure that he was complying with the animal ordinances on the

following five occasions:  July 23, 2002; and February 28, 2003; and September 18, 2004; and May

30, 2006; and  and August 9, 2006.  *See* Ans ¶ 30.  The township denies entering onto Schulze's land

on any other occasions.  *See* Ans ¶ 33.

Schulze does not dispute that on February 19, 2008, the Oceana County Circuit Court issued

an Order for Entry Upon Land, which authorized township and law-enforcement personnel to enter his land to inspect and check for compliance with the animal-control ordinances. *See* Ans ¶ 30. The township alleges that on August 15, 2008, Schulze unlawfully interfered with their attempt to enter and inspect pursuant to that order. *See* Ans ¶ 31. Nor does Schulze dispute that in November 2008, the Circuit Judge issued the aforementioned order holding him in contempt and directing him to remove all dangerous animals from his property on pain of incarceration.

**Schulze asserts five claims against the three defendants under 42 U.S.C. § 1983.** In Counts One and Two, Schulze claims that the Dangerous Animal Ordinance violates his right to procedural due process. Namely, although section 2 defines "pit bull", it fails to specify the method to be used to determine a dog's lineage, thus reposing "unbridled discretion" in the hands of township officials to determine when a resident's dog is a pit bull covered by the ordinance. Thus, Schulze contends, the Dangerous Animal Ordinance is unconstitutionally vague and overbroad. *See* Comp ¶¶ 36-42 (overbroad) and Comp ¶¶ 43-49 (void for vagueness).

In Count Three, Schulze claims that the blanket prohibition on pit bulls is not narrowly tailored to serve a compelling interest, which he contends is required for such an infringement on his constitutional right to privacy in his home and on his land. *See* Comp ¶¶ 50-52. In count Four, Schulze claims that the total prohibition on residents' possession of pit bulls on their land violates his right to "substantive due process" by intentionally restricting his right to privacy. *See* Comp ¶¶ 53-56. In Count Five, Schulze claims that the township has targeted him for enforcement of the ordinances because of his race while not enforcing them against residents of other races who keep pit bulls, with no rational basis for the difference in treatment. *See* Comp ¶¶ 57-59. In Count Six, Schulze claims that the defendants conspired to violate his civil rights in violation of 42 U.S.C. §

-13-

1985.  *See* Comp ¶¶ 60-61.

On all six counts, Schulze seeks a declaration that the Dangerous Animal Ordinance is unconstitutionally overbroad and void for vagueness; a declaration that the November 17, 2008 order directing him to comply with the ordinance by removing all pit bulls from his property is of no effect; compensatory damages; an order enjoining the defendants from enforcing the Dangerous Animal Ordinance against him; punitive damages from township supervisor Richard Smith in his individual capacity; an award of attorneys fees and costs pursuant to 42 U.S.C. § 1988; and any other relief which the court deems just and proper.

The Township filed a motion for summary judgment on September 2, Schulze filed an opposition brief on September 30, and the Township filed a reply brief on October 6, 2009.  *See* Doc. Nos. 7, 9 and 10.  The township seeks an award of attorneys fees and costs because, in their view, Schulze's lawsuit is frivolous.  *See* Ans at 14, 16, 17, 18, 19 and 20.

**For the reasons that follow, the court will grant summary judgment to the defendants.**

## A FEDERAL COURT'S APPLICATION OF STATE LAW

"'In applying state law, we anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court.'"  *Appalachian Railcar Servs. v. Boatright Enters., Inc.*, 602 F. Supp.2d 829, *14 (W.D. Mich. 2008) (Paul L. Maloney, J.) ("*ARS*") (quoting *NUFIC of Pittsburgh v. Alticor, Inc.*, 472 F.3d 436, 438 (6th Cir. 2007) (Richard Allen Griffin, J.) (citation omitted)).  If the state supreme court has not conclusively decided the issue, a federal court presumptively looks to the decisions of the state's appellate courts:  "In anticipating how the state supreme court would rule, 'we look to the decisions of the state's intermediate courts

-14-

unless we are convinced that the state supreme court would decide the issue differently.'" *ARS*, 602

F. Supp.2d at *14 (citing *US v. Lancaster*, 501 F.3d 673, 679 n.3 (6th Cir. 2007) (Griffin, J.) (citation

omitted)); *see also West v. AT&T Co.*, 311 U.S. 223, 236-37 (1940) ("A state is not without law save

as its highest court has declared it. There are many rules of decision commonly accepted and acted

upon by the bar and inferior courts which are nevertheless laws of the state although the highest

court of the state has never passed upon them. In those circumstances the federal court is not free

to reject the state rule merely because it has not received the sanction of the highest state court . .

. ."), *followed by Mroz v. Lee*, 5 F.3d 1016, 1019 (6th Cir. 1993) and *Dairy, Bakery & Food Workers

Local Union No. 386 v. Grand Rapids Milk Div. of Nat'l Dairy Prods. Corp.*, 160 F. Supp. 34, 39

(W.D. Mich. 1958) (Kent, J.).

In determining the controlling law of the State, a federal court also "*may* give weight" to the

decisions of a State trial court, *Lakeland Reg. Health Sys. v. Walgreens Health Initiatives, Inc.*, 604

F. Supp.2d 983, 989 (W.D. Mich. 2009) (Maloney, C.J.) (citing *Bradley v. GMC*, 512 F.2d 602, 605

(6th Cir. 1975)), especially when it is consistent with state appellate decisions, *Bradley*, 512 F.2d at

605. But the federal court is not *obligated* to follow state trial-court decisions. *See Krakoff v. US*,

431 F.2d 847, 849 (6th Cir. 1970) ("a federal court is not bound by the decision of state lower court

where there has been no determination of a question of state law by the state's highest court.")

(citing *CIR v. Bosch*, 387 U.S. 456 (1967)); *see also Gray v. Green Tokai Co., Ltd.*, 2007 WL

1026425, *3 (S.D. Ohio Mar. 30, 2007) (Rose, J.) ("Lower state court decisions are not binding on

federal courts seeking to decide an issue of state law if the federal court is convinced that the highest

state court would decide otherwise.") (citing *Woods v . Vermillion Local Sch. Dist.*, 1999 WL

-15-

652019, *2 (N.D. Ohio Aug. 9, 1999)) (other citations & internal quotation marks omitted).[1]

### PRECEDENTIAL VALUE OF MICHIGAN DECISIONS

A federal court must accord the same precedential value to a state-court decision as it would be accorded by that state's courts.  *See ARS*, 602 F. Supp.2d at – (citing *Mutuelle Generale Francaise Vie v. Life Ass. Co. of Pa.*, 688 F. Supp. 386, 397 n.15 (N.D. Ill. 1988) ("[O]ne Supreme Court decision (*Fidelity Union Trust Co. v. Field*, 311 U.S. 169 . . . (1940)) . . . required a federal court to ascribe the same precedential force to a New Jersey trial court decision that such a decision would receive in that state's court system under the peculiarities of New Jersey law.")).  If a state court would not be bound by a particular state-court decision, then neither is this court.  *ARS*, 602 F. Supp.2d at – (citing *King v. Order of United Commercial Travelers of America*, 333 U.S. 153, 161 (1948) ("a federal court adjudicating a matter of state law in a diversity suit is, in effect, only another court of the State; it would be incongruous indeed to hold the federal court bound by a decision which would not be binding on any state court.") (citation omitted)).

Michigan Court Rule 7.215(C)(2) states that "[a] published decision of the Court of Appeals has precedential value under the rule of stare decisis."  This subsection makes no distinction based on when the decision was issued..  *ARS*, 602 F. Supp.2d at –.

However, Michigan Court Rule 7.215(J)(1) provides that "[a] panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals *issued on or after November 1, 1990*, that has not been reversed or modified by the Supreme Court or by

---

[1]

*Accord Am. Int'l Ins. Co. of P.R. v. Lampe GmbH*, 307 F. App'x 645, 647 (3d Cir. 2009) (citing *Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 199 (3d Cir. 2004)).

a Special Panel of the Court of Appeals as provided in this rule." *ARS*, 602 F. Supp.2d at –
(emphasis added).

Synthesizing Michigan Court Rules 7.215(C)(2) and 7.215(J)(1), the Michigan Court of
Appeals accords precedential value to *all* of its prior published decisions, regardless of when they
were issued. *ARS*, 602 F. Supp.2d at –. When a post-November 1, 1990 published Court of Appeals
decision conflicts with a *pre*-November 1, 1990 published Court of Appeals decision, however, the
*post*-November 1, 1990 decision prevails. *Id.*

When there is a conflict between two published decisions of the Court of Appeals that were
*both* issued *after* November 1, 1990, Michigan courts must follow the first opinion that addressed
the matter at issue. *ARS*, 602 F. Supp.2d at – (citing *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.
2d 546, 554 (Mich. App. 1999) (citation omitted)).

By contrast, Michigan Court of Appeals panels are not bound by *un*published decisions of
that same court, regardless of when they were issued. *ARS*, 602 F. Supp.2d at – (citing *Iqbal v.
Bristol West Ins. Group*, 748 N.W.2d 574, 582 n.5 (Mich. App. 2008) (citing MICH. CT. R.
7.215(J)(1))). Nonetheless, this court may consider and follow unpublished state-court decisions,
so long as they do not contradict published decisions of the Michigan Supreme Court or Michigan
Court of Appeals. *See Republic-Franklin Ins. Co. v. Bosse*, No. 95-3401, 89 F.3d 835, 1996 WL
301722, *5 n.4 (6th Cir. June 4, 1996) (although unpublished decisions are not generally controlling
under Ohio law, "[w]e cite them, nevertheless, due to our sensitivity to state law in deciding
diversity cases.") (citing *Royal Indem. Co.*, 364 F.2d at 154 ("Although we are not bound in a
diversity case by an unreported decision of a State court of original jurisdiction, we may give weight
to this [unreported] decision of the chancery [court] in determining what is the controlling [state]

law.")).

**Finally, a federal court's interpretation of state law is not binding.** *ARS*, 602 F. Supp.2d at – (citing *Leavitt v. Jane L.*, 518 U.S. 137, 146 (1996) (Stevens, J., dissenting o.g., joined by Souter, Ginsburg, & Breyer, JJ.) ("[T]he decision of a federal court (even this Court) on a question of state law is not binding on state tribunals . . . .")); *accord McGrath v. Toys 'R Us, Inc.*, 356 F.3d 246, 250 (2d Cir. 2004) (citing *Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86, 90 (2d Cir. 1996)); 20 AM. JUR.2D COURTS § 225 (1965). As our Circuit recently emphasized,

> No federal court has the final say on what [state] law means. Even the decision of the highest federal court, the United States Supreme Court, about the meaning of [a state] law has no more binding authority on the [state] Supreme Court than the decision of [another State's] Supreme Court or for that matter any other court.

*Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 472 (6th Cir. 2008); *see also Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1042 (6th Cir. 1992) ("the district court's reliance on federal cases interpreting Ohio law is only correct if those cases accurately reflect the law of Ohio") (citation omitted).

Accordingly, this court will seriously consider our Circuit's interpretation of state law, or another district court's interpretation of state law, but is not bound by it. *See ARS*, 602 F. Supp.2d at –; *see also Pack v. Damon Corp.*, 2006 WL 1156489, *1 (E.D. Mich. May 1, 2006) ("Michigan courts, in turn, are not bound by the Sixth Circuit's interpretation of Michigan law."). *See, e.g., MPAS v. Michigan DOC*, 581 F. Supp.2d 847, 856 (W.D. Mich. 2008) (Maloney, C.J.) (declining to follow U.S. District Court for the Eastern District of Michigan's determination that MDOC is a political subdivision of the State of Michigan, a matter of state law).

## DISCUSSION
### The *Rooker-Feldman* Doctrine Bars Jurisdiction over Claims 4, 5 and 6

"'Federal courts are courts of limited jurisdiction with only such jurisdiction as is defined by the Constitution and granted by Congress'", *US v. Glover*, 242 F.3d 333, 335 (6th Cir. 2001), *cert. denied*, – U.S. –, – S.Ct. –, 2009 WL 1849801 (U.S. Oct. 5, 2009) (No. 08-1587), and "'the burden of establishing jurisdiction is on the plaintiff'", *Stannifer v. Brannan*, 564 F.3d 455, 460 n.1 (6th Cir. 2009) (quoting *Tobin v. Astra Pharm Prods., Inc.*, 993 F.2d 528, 543 (6th Cir. 1993)). The township invokes the *Rooker-Feldman* doctrine as a bar to jurisdiction over at least some of the claims in Schulze's complaint, and Schulze has not carried his burden of showing that *Rooker-Feldman* does not apply.

Under the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments. *See In re Smith*, – F. App'x –, 2009 WL 3049202, *2 (6th Cir. Sept. 24, 2009) (C.J. Batchelder, Suhrheinrich, Sutton) (citing *Marks v. Tennessee*, 554 F.3d 619, 622 (6th Cir. 2009)). This is so because 28 U.S.C. § 1257, "as long interpreted, vests authority to review a state court's judgment solely in the [U.S. Supreme] Court." *ExxonMobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005).[2]

Schulze asserts that the *Rooker-Feldman* doctrine does not apply because

[t]he allegations of the complaint were never decided on the merits in the state courts. There are no findings of fact or conclusions of law whatsoever concerning the allegations set for the [sic] on [sic] the Complaint. In fact, the trial judge himself

---

[2]

The *Rooker-Feldman* doctrine does not bar a lower federal court's review of State "executive action, including determinations made by a state administrative agency. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002); *see, e.g., Marks*, 554 F.3d 619 (holding that *Rooker-Feldman* did not bar federal district court's adjudication of disabled attorney's ADA action against State of Tennessee and its Administrative Office of the Courts, alleging that state trial judge and AOC discriminated and retaliated against him in underlying legal-malpractice action because of his disability). This is of no avail to Schulze, of course, as he is essentially challenging the decision of the Michigan Court of Appeals on the claims and issues raised in his counts four through six, not some action or determination by a Michigan state administrative agency.

-19-

> stated "[t]he other issues concerning discrimination and things of this nature do not
> fall within the province of this Court's jurisdiction . . . ."  We were unable to get a
> hearing on the merits in state court of any of the lawsuits referenced [sic] by the
> Defendants.

P's Opp at 6.  Preliminarily, the court notes that Schulze provides no citation to the record to verify

his characterization of the Michigan circuit judge's statement regarding his jurisdiction or the scope

of the issues that he was deciding in any of the four prior lawsuits.  The court is not obligated to

scour the record when a party fails to identify evidence in the record, in this case a transcript of some

state-court proceeding.

     In any event, Schulze focuses only on the state trial court's orders and utterly fails to mention

the Michigan Court of Appeals decision in the third lawsuit.  In affirming the Michigan circuit

court's grant of summary disposition to the township defendants in the third lawsuit, the Michigan

Court of Appeals <u>specifically</u> <u>stated</u> that "with respect to the court's ruling that count I fails

*substantively*, plaintiffs insufficiently address the issue, failing to present any legal analysis

regarding ex-post facto legislation, bills of attainder, substantive due process, equal protection, and

deprivation of property rights."  The Michigan Court of Appeals expressly determined that Schulze

failed to provide either legal authority or argument to support his constitutional claims with regard

to these same ordinances and their enforcement against him.  It concluded by noting that "even if

*substantively* reviewed, plaintiffs' constitutional claims in count I fail for the most part."  The Court

of Appeals specifically noted the lack of merit in Schulze's equal protection, substantive due

process, bill of attainder, and ex post facto claims under governing Michigan appellate precedents.

(As for the Court of Appeals's "for the most part" qualifier, it explained merely that governmental

immunity did not bar those claims.)

     If this court entertained Schulze's claims which the Michigan Court of Appeals concluded

lacked merit and were unsupported, it would effectively be reviewing that court's decision as to those claims.  In short, Schulze cannot "use the statutory skeleton of federal civil rights law to appeal to the district court and ultimately overturn the decision of the state courts" on the claims presented in counts four, five and six of the instant complaint.  *Briscoe v. Jackson*, 285 F. App'x 205, 207 (6th Cir. 2008).  "This is the precise type of state-court reversal prohibited by the *Rooker-Feldman* doctrine."  *Briscoe*, 285 F. App'x at 207.


**DISCUSSION**
**Schulze's Entire Complaint is Barred by Michigan's *Res Judicata* Doctrine**

In addition, the entirety of Schulze's complaint is barred by Michigan's doctrine of *res judicata*.  Under Michigan law,

> the doctrine of *res judicata* is employed to prevent multiple suits litigating the same cause of action.  The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, *or could have been*, resolved in the first.

*Adair v. Michigan*, 470 Mich. 105, 121, 680 N.W.2d 386, 396 (Mich. 2004) (Taylor, J., for the Court) (citing *Sewell v. Clean Cut Mgmt., Inc.*, 463 Mich. 569, 575, 621 N.W.2d 222, 225 (2001)).  First, the matters raised in the instant complaint's counts four through six were rejected on their merits by the Michigan Court of Appeals.  Moreover, Schulze's count 1-3 claims of vagueness, overbreadth, and the right to privacy, could and should have been presented to the Michigan state courts (and *supported*), through the exercise of reasonable diligence, in that same prior action.  *See Weatherly v. Weatherly*, 2009 WL 3200036, *2 (Mich. App. Oct. 6, 2009) (p.c.) (P.J. Murray, Markey, Borrello) (the Michigan Supreme "'Court has taken a broad approach to the doctrine of *res judicata*, holding that it bars not only claims already litigated, but also every claim arising from the

same transaction that the parties, exercising reasonable diligence, could have raised but did not.'") (quoting *Adair*, 470 Mich. at 121, 680 N.W.2d at 396).

Schulze never cogently or persuasively explains why he failed to raise those claims and issues in any of the prior state-court actions.  In particular, he asserts that his civil-conspiracy claims in the prior actions were against township residents, not these township defendants, but he completely fails to explain why he could not have asserted the instant conspiracy claims against *these* defendants in at least one of the prior state-court actions.

Significantly, he presents no authority suggesting that the Michigan Supreme Court would honor his excuse that he had no incentive to raise these or any other  omitted claims and issues because he was trying to comply with the challenged ordinances and still thought that an amicable resolution was possible.  *See* P's Opp at 8-11.  Nor has the court located any Michigan precedent suggesting that the hope or expectation of a settlement operates as an exception to the broad obligation to raise all claims and issues that arise out of the same transaction or events or involve the same evidence.

## DISCUSSION
## Rule 56(f) Does Not Apply

Finally, Schulze invokes Fed. R. Civ. P. 56(f) and asserts that this court should defer ruling on the summary-judgment motion  because

> no depositions of any defendants or anyone else have taken place.  There has been no opportunity to delve into the Defendants' actions in detail concerning why they would fail to act upon Mr. Schulze's attempts to comply with their ordinances. There has been no opportunity to seek discovery concerning whether others have been treated in this manner.

P's Opp at 12. Schulze fails to explain how factual discovery would have any bearing on the township's instant motion, which is based on purely legal arguments under the *Rooker-Feldman* and *res judicata* doctrines. The township's motion nowhere contends that Schulze's claims should be dismissed, if not barred by those doctrines, because of the lack of record evidence to create a genuine issue of material fact on an element of any claim. *See US v. Boyce*, 2000 WL 641612, *3 (S.D. Cal. Mar. 22, 2000) (in discussion of Rule 56(f) request, court noted parties' prior agreement that defendant would "limit the scope of its partial summary judgment motion to *the purely legal issue of res judicata*[,] which can be decided without further discovery.") (emphasis added).[3]

Accordingly, Rule 56(f) is inapposite, and delay of a ruling on the defendants' *Rooker-Feldman* and *res judicata* arguments due to any need for factual discovery is unwarranted. "[T]he plaintiffs cannot prolong the resolution of what are otherwise purely legal issues by what are

---

[3]

*Cf. Flowers v. US*, 75 Fed. Cl. 615, 635-36 (Fed. Cl. 2007) ("Plaintiff, however, fails to explain how the discovery he seeks will raise a factual dispute to rebut defendant's legal contention – that this court does not have jurisdiction over plaintiff's household goods claim. Indeed, plaintiff cannot."), *recon. denied*, 2007 WL 5161798 (Fed. Cl. Mar. 21, 2007), *aff'd*, 321 F. App'x 928 (Fed. Cir. 2008), *reh'g & reh'g en banc denied* (Fed. Cir. Feb. 4, 2009);

*Cheolas v. City of Harper Woods*, 2009 WL 388548, *9 n.9 (E.D. Mich. Feb. 13, 2009) ("In light of the court's determination that all of the claims against Defendants LaBarge and DeWaele are subject to dismissal on immunity grounds, the court necessarily must deny Plaintiffs' motion for a continuance under FED. R. CIV. P. 56(f)(2). [N]o amount of discovery would alter the legal conclusion that the activities allegedly engaged in by these two defendants were closely related to the judicial phase of the criminal process, and thus are functions protected by absolute immunity.");

*McCabe v. Macauley*, 545 F. Supp.2d 857, 862 (N.D. Iowa 2008) (noting with approval the court's prior denial of plaintiff's Rule 56(f) motion "as to those 'purely legal issues' in [the] Motion for Summary Judgment on which discovery could have no bearing") (citation to prior op. omitted);

*Anderson v. Premera Blue Cross Blue Shield of Alaska*, 2004 WL 2958621, *4 (D. Ak. Dec. 2, 2004) (where issue concerned the remedies available under ERISA and the propriety of class-action certification, court denied Rule 56(f) request and remarked, "it is evident that any opposition to such a purely legal argument requires no factual discovery.").

-23-

otherwise purely legal issues by ambiguous references to the need for, and the general importance of, discovery." *Robinson v. Akins*, 1990 WL 71285, *6 (N.D. Ill. May 7, 1990).


### ORDER

Defendants' motion for summary judgment [document # 7] is **GRANTED**.

Defendant's counsel will file a separate motion within 21 days of this order if they wish to pursue the request for attorney's fees and costs.  If a motion is not filed, the request will be deemed waived and a Judgment will issue.

**IT IS SO ORDERED** on this 27th day of October 2009.


/s/ Paul L. Maloney
Honorable  Paul L. Maloney
Chief United States District Judge